## Charter Amendments.

*Corporations—Charter amendments—Application to the Governor—Acts of April 29, 1874, and June 13, 1883, P. L. 122.* .

1. An application to the Governor to amend a charter will not be granted where it is sought to write into the charter provisions not required or specifically authorized to be inserted therein by section 3 or any other section of the Act of April 29, 1874, P. L. 73, and its supplements, or by any other act of assembly.

2. The Governor should not be called upon to approve or disapprove matters of corporate policy involving questions of law.

Department of Justice. Opinion to Hon. Clyde L. King, Secretary of the Commonwealth.

METZGER, Asst. Dep. Att'y-Gen., Aug. 14, 1925.—This department is in receipt of your letter of Aug. 11th, enclosing certificate for amendment of charter of J. H. and C. K. Eagle, Incorporated. You inquire whether the proposed amendment is of such a character as is comprehended by the Act of June 13, 1883, P. L. 122, as amended, and should be submitted to the Governor for his approval.

The only question which can confront us is whether the corporation has chosen the proper method of adopting provisions prohibiting the creation of certain future obligations or the authorization of any additional class or classes of capital stock without first obtaining the consent of 85 per cent. of the stockholders entitled to vote.

The answer to this question, in my opinion, depends entirely upon:

(*a*) Whether these provisons would have been proper matters for inclusion originally in the application for charter.

(*b*) Whether, if they were not or could not have been originally included in the charter, they may now be inserted by a proceeding in amendment of charter.

Briefly stated, it is sought in the proposed proceeding to write into the charter certain provisions not required or specifically authorized to be inserted therein by section 3 or any other section of the General Corporation Act of April 29, 1874, P. L. 73, and its supplements, or by any other act of assembly.

(*a*) Let us first inquire whether these would have been proper charter provisions. In the first reported opinion on this subject after the passage of the General Corporation Act of April 29, 1874, we find Attorney-General Dimmick advising the Secretary of the Commonwealth, under date of Feb. 26, 1875, Reports of the Attorney-General, 1895-1896, page 313, as follows:

"The certificate presented for the incorporation of 'The Mechanics' Saving Fund and Building Association of Pottsville,' is irregular and ought not, in my opinion, to be approved, because it contains unnecessary and irrelevant matters.

Charter Amendments.

"It not merely sets forth all that section 3 of the Act of April 29, 1874, requires, but it further states that, in accordance with section 17 of that act, the association has purchased certain real estate and, in payment of it, has issued a number of shares of full-paid stock.

"Even if it were not a matter of doubt whether the provisions of this latter section applied to corporations of this character, it is very plain that His Excellency the Governor ought not to be called upon to sanction or disapprove of such transactions.

"His duty in examining certificates is merely *to see if they conform to the conditions upon which corporate franchises are granted, and certificates ought not to set forth more than is necessary to enable him to discharge that duty.*"

In Formation and Regulation of Corporations in Pennsylvania, by Meredith and Tate, pages 217, 218, we find that on March 29, 1882, Attorney-General Palmer advised the Secretary of the Commonwealth as follows: "I am of opinion that nothing ought to appear in the certificate of incorporation but the *essential requisites designated in the 3rd section* of the act of assembly, and that the executive is bound to do nothing more than pass upon the formality of the papers."

In an opinion by Attorney-General Kirkpatrick, dated April 10, 1889, reported in 6 Pa. C. C. Reps. 575-78, he says:

"According to a ruling of one of my predecessors in this department, the duty of the Governor in examining certificates is merely to see that they conform to the conditions upon which corporate franchises are granted. It was further therein aptly suggested that a certificate ought not to set forth more than is necessary to enable him to discharge that duty, and that an application was irregular and ought not to be approved which contained irrelevant matter, and the Governor ought not to be called upon to sanction or disapprove transactions indicated by such recitals: Meredith & Tate's Corporations, 116. Without determining how far the opinion referred to, so far as it applied to the particular case then in hand, is in harmony with recent views, the principle thus generally stated is certainly to be commended. I think that the certificate would be proper and free from difficulty if the purpose stated were amended, as already suggested, and this last statement as to the purpose of said corporation to take coal and other lands, etc., in payment on stock, stricken out.

"It may be true that the recital above objected to would not invalidate the charter, and the same might be regarded as a mere surplusage, yet it is desirable to secure exact compliance with the requirements of the Corporation Act in the framing of the certificate upon which the letters-patent are to issue, and *to preserve simplicity of statement uncomplicated with recitals which, if encouraged or permitted, might be productive of difficulty and doubt in passing upon the sufficiency and regularity of the application.* For that reason, if for no other, I would advise that the certificate be required to be *confined to such statements only as are prescribed by the act as the prerequisite to the granting of a charter, and that all other matter, whatever may be the purpose sought to be subserved thereby, be required to be stricken out or omitted.*"

Thus, the uniform practice has been to allow as articles and conditions of a charter merely those specified in section 3 of the Act of 1874 and such others only as may be specifically authorized by statute.

(b) Let us now see whether, if such provisions were not or could not have been originally included in the charter, they may now be inserted by means of a proceeding in amendment of charter.

The answer to this question depends entirely upon whether these provisions were proper matters for inclusion originally in the application for charter, for it certainly cannot be contended that a corporation may accomplish by amending its charter something which could not originally have been done in its certificate of incorporation. To hold otherwise would result in permitting a corporation to do in two steps that which it could not properly do in one, and, as regards the improvement, alteration and amendment of charters, that clearly was not the intention of the legislature in passing the so-called Corporation Amendment Act. See opinion of Attorney-General Carson, under date of March 16, 1906, In re Pa. Stave Co., 32 Pa. C. C. Reps. 347; 15 D. R. 603.

The language of Attorney-General Cassidy, in an opinion rendered to the Secretary of the Commonwealth Sept. 28, 1883, Reports of the Attorney-General, 1895-1896, pages 393-95, is of special interest in this connection:

"It (amendment) necessarily implies something upon which the correction, alteration, improvement or reformation can operate, something to be reformed, corrected, rectified, altered or improved. In other words, that which is proposed as amendment must be germane or relate to the thing to be amended. In respect to the amendment of a charter of incorporation, the amendment must relate to the charter as *originally granted,* and if it does not correct, improve, reform, rectify or alter *something in the original charter,* it is not, properly speaking, an amendment to that charter.

". . . *It does not pretend to alter in any proper sense any article or condition in the original charter, and if not, it cannot be said to be such an alteration as is contemplated by the act.*"

In the instant case, it is not proposed to correct or reform any article or condition in the original certificate of incorporation or to insert any provision specifically authorized by statute to be written into charters.

That an amendment proceeding can apply only to an article or condition of the original charter or to a provision specifically authorized by statute to be inserted in the charter, is further shown in the two opinions which follow:

(1) Prior to the passage of the Change of Name Act of April 22, 1903, P. L. 251, Attorney-General Kirkpatrick held that the said Corporation Amendment Act of 1883 applied to and authorized a change in corporate title for the following reasons (3 Pa. C. C. Reps. 184):

"Section 3 of the Corporation Act of 1874 provides that the charter shall specify in seven distinct paragraphs, numbered from one to seven inclusive, as many distinct things; the first of which is the name of the corporation.

"The Corporation Amendment Act of 1883 authorizes the improvement, amendment or alteration of such a charter. *The name of the corporation is a necessary part of its charter,* without which it can no more exist than it can exist without officers, corporate succession or any other property essential to its nature. The name is an indispensable part of the constitution of every corporation, the knot of its combination, as it has been called, without which it cannot perform its corporate functions.

"*This name is conferred by the charter and cannot be changed without an alteration of the charter,* and I am of opinion that a general power to alter or amend a charter is a power to alter or amend any part of the charter, and necessarily includes the power to alter the name, which is a part of the charter: Fidelity Mutual Aid Ass'n, 12 W. N. C. 269."

Here the reasoning was put squarely on the ground that the first of the seven prescribed articles in the certificate of incorporation provided for the inclusion of the corporate title. The proceeding thus properly amended or altered an article of the charter, which is not the fact in the instant case.

Charter Amendments.

(2) The opinion of Attorney-General Carson upon the Pa. Stave Co. Application, 32 Pa. C. C. Reps. 347, 15 D. R. 603, which I understand the applicant relies upon principally in support of the present proceeding, decided that the charter of a manufacturing corporation might be so amended as to empower the directors to sell or release the real estate of the company without the consent of a majority of the stock in value consenting or agreeing thereto. It is easily seen that this opinion furnishes no precedent upon the facts in the instant case and that there is a total lack of analogy when we examine the reasons upon which it is based (32 Pa. C. C. Reps. 347, 349; 15 D. R. 603) : "It must be borne in mind that, under clause 12 of section 39 of the Act of April 29, 1874, under which the company was chartered, relating to mechanical, mining, manufacturing and other corporations, P. L. 1874, p. 103, 'any such corporation may, from time to time, acquire and dispose of real estate, and may construct, have or otherwise dispose of dwellings and other buildings; but no power to sell or release the real estate of such corporation shall be exercised by the directors thereof, unless such power be expressly given in the *certificates originally filed*, without a consent of the majority of the stock in value consenting and agreeing to such sale or lease before making the same,' etc. Hence, the power to sell or release real estate already belongs to the corporation. The amendment does not seek to confer it, but, as the charter did not confer this power, *as it might have done*, upon the directors, the application for the amendment is for the addition of a clause to the charter, which shall give to the directors the power to sell and release real estate without the consent of a majority of the stock before making the sale. . . . The method sought by the amendment is one *recognized by the act and might have been had at the outstart.*"

Thus, the Pennsylvania Stave Company was accomplishing by amendment only what it was specifically authorized by statute to do in its charter originally. It cannot, therefore, be too strongly emphasized at this point that the Pennsylvania Stave Company, having been formed as a manufacturing corporation under the provisions of paragraph 18, section 2, of the General Corporation Act of 1874, could, under clause 12 of section 39 of that act, *provide in its charter* that the power to sell or release real estate shall be exercised by the directors. However, it has been expressly decided that in the case of corporations which are not empowered to insert such provisions *in their charters* in the first instance, *they may not do so by amendment:* In re Duquesne Brewing Co., 29 Pa. C. C. Reps. 463; 14 D. R. 140.

In an opinion by Whitworth, Corporation Deputy, dated Oct. 1, 1903, reported in Opinions Corporations, 1903-1912, by Whitworth, page 7, after reciting the seven articles and conditions of the charter required to be set forth by section 3 of the General Corporation Act of 1874, it is stated:

"Under certain conditions, other articles and conditions of a special character may be included in a charter, such as an article giving power to directors to sell, lease or release real estate, and a provision as to the by-laws. (Authorization for inserting the former provision is found in clause 12, section 39, and for the latter, in section 5 of the said Act of 1874.)

"It is to be observed here that the amendment, improvement or alteration is not of the charter, but of some article or condition in the charter, *and the act does not authorize the charter contract to be changed by the insertion therein of an entirely new article or condition, unless it could have been legally inserted in the charter at the time of incorporation.*"

In the instant case, no article or condition of the charter is sought to be amended and no statute specifically authorizes the inclusion of such provisions

in the charter, originally or by way of amendment. The provisions have to do with matters of corporate policy and involve questions of law which the Governor should not be called upon to approve or disapprove. Nor is there anything peculiar to the adoption of such a provision which makes necessary the executive approval. The question here involved is by no means a novel one. Applications for similar amendments have been uniformly refused under numerous opinions of Attorneys-General and the practice of the Department of the Secretary of the Commonwealth covering a period of forty years. The applicant has an easy and adequate method of adopting such a provision by means of an amendment to its by-laws.

I, therefore, advise you that this amendment proceeding is not of such a character as is comprehended by the Corporation Amendment Act of 1883 and should not be submitted to the Governor for approval.

From C. P. Addams, Harrisburg, Pa.